AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Duplicate



CLERK'S OFFICE
A TRUE COPY
Dec 15, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Target Devices 1 - 5, currently in MPD<br>custody, as further described in Attachment A | ) <br> ) <br> ) <br> ) Case No.  23-M-528 (SCD) <br> ) <br> ) <br> ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ___Eastern___ District of ___Wisconsin___ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before  12-29-23  *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  Hon. Stephen C. Dries  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  12-15-23. 11:55 am

_Judge's signature_

City and state:  Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1.      The property to be searched is one electronic storage device associated with Milwaukee Police Department IR no. 22-257-0179 which can be further described as;

   a.   Black Apple iPhone w/ black case (model unknown, serial no. unknown, MPD Inventory no. 22034021 item 1, **TARGET DEVICE 1**)

   b.   White Apple iPhone w/ black rubber case and cracked screen (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 1, **TARGET DEVICE 2**)

   c.   White Apple iPhone w/ blue and gray rubber case (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 2, **TARGET DEVICE 3**)

   d.   Black US Cellular Flip phone (model unknown, serial no. unknown, MPD Inventory no. 22034023 item 1, **TARGET DEVICE 4**)

   e.   Black Apple iPhone w/ no case (model unknown, serial no. unknown, MPD Inventory no. 22034018 item 1, **TARGET DEVICE 5**)

# ATTACHMENT B

## Particular Things to be Seized

1.      All records on cellular phone related to violations of of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon, 18 U.S.C. § 922 (o)(1) (possession of a machine gun unlawfully), 21 U.S.C. § 841(a) possession with the intent to distribute THC) including:

   a.  lists of contacts with any identifying information;

   b.  photographs, videos, or other media storage connected to drugs and firearms;

   c.  types, amounts, and prices of drugs and firearms purchased/sold;

   d.  any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   e.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.      Any and all financial records connected to the purchase/sale of firearms or drugs;

3.      Documentation establishing the identity of the individuals in control of the residences;

4.      Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

2

5. Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6. Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7. All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

8. Lists of firearm and drug customers and related identifying information;

9. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10. Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently

3

called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

13. Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

14. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15. Records evidencing the use of the Internet Protocol address, including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4

CLERK'S OFFICE
A TRUE COPY
Dec 15, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   23-M-528 (SCD)
)
**Target Devices 1 - 5, currently in MPD custody,** )
**as further described in Attachment A** )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371; 922(g)(1); 922(o)(1); and 21 U.S.C. § 841 (a) | Conspiracy; Possession of a firearm by a convicted felon; Unlawful possession of a machinegun; and Possession with the intent to distribute THC. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Sean Carlson, ATF SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:   12-15-23

_____
*Judge's signature*

City and state:   Milwaukee, WI          Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**AN APPLICATION FOR A SEARCH WARRANT**</u>

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, five cellular phones, and the extraction of evidence described in Attachment B.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

3.      As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and

experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

4. Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

5. I have relied on informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases" of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

6. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

7. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their

vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

8. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

9. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

10. There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon, 18 U.S.C. § 922 (o)(1) (possession of a machine gun unlawfully), 21 U.S.C. § 841(a) possession with the intent to distribute THC is housed within the aforementioned cellular devices.

3

11.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF PROPERTY TO BE SEARCHED

12.     The property to be searched is five electronic storage devices associated with Milwaukee Police Department IR no. 22-257-0179 which can be further described as follows:

a. Black Apple iPhone w/ black case (model unknown, serial no. unknown, MPD Inventory no. 22034021 item 1, **TARGET DEVICE 1**)

b. White Apple iPhone w/ black rubber case and cracked screen (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 1, **TARGET DEVICE 2**)

c. White Apple iPhone w/ blue and gray rubber case (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 2, **TARGET DEVICE 3**)

d. Black US Cellular Flip phone (model unknown, serial no. unknown, MPD Inventory no. 22034023 item 1, **TARGET DEVICE 4**)

e. Black Apple iPhone w/ no case (model unknown, serial no. unknown, MPD Inventory no. 22034018 item 1, **TARGET DEVICE 5**)

4

The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

## PROBABLE CAUSE

13. On October 17, 2023, the Honorable Nancy Joseph, U.S. Magistrate Judge in the eastern district of Wisconsin, signed a search warrant for TARGET DEVICES 1-5, with a command to execute the warrant by October 31, 2023. At the time the warrant was signed, Milwaukee Police Department (MDP) Detectives agreed to conducting the forensic extraction of the devices, within the stipulated time peried.

14. On or about November 28, 2023, Your Affiant was notified by the MPD Detectives that the cellular devices were never extracted nor was the extraction attempted or started within the stipulated time period, because MPD's software license for the application utilized to extract data from smartphones had expired. No extraction was attempted on the devices to date. Your affiant is requesting to renew this device warrant in order to facilitate an extraction of the target devices.

15. In February of 2023, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), began investigating an armed car jacking in which one individual sustained non-fatal gunshot wounds and the stolen vehicle was subsequently found burned. During the investigation, agents utilized cellular phone timing advance data, open source information, and call data records to identify Jhony MARCHENA as a suspect, along with co-conspirators Geo OWENS, Marquis HARRIS, Kentreal EVANS, and Trevon MALONE. After further investigation, agents determined this group collectively

5

identifies themselves as the rap group "Global Trap Stars" or "GTS", and Geo OWENS is the self-proclaimed leader. Agents observed an individual named Romaine HAWTHORNE was also visible in "Global Trap Stars" videos alongside Jhony MARCHENA. The group actively posts videos to Youtube.com in which they rap about dealing narcotics, committing armed robberies, auto thefts, and possessing firearms with switches, which I know to be a device that converts a handgun to firing in full automatic mode, and thus classified as a machine gun. My investigation, as well as that of other officers assisting me, indicates this group of individuals has been involved in criminal activity on a regular basis for at least the past year.

16.     As will be explained in detail below, "GTS" came to law enforcement's attention when multiple members were linked to an armed robbery/carjacking/arson investigation in February of 2023. As the investigation expanded, evidence of drug dealing, stolen vehicles and mortgage fraud was uncovered in GTS member's phone downloads. Further, investigators discovered repeated links between GTS members and a homicide that took place July 22, 2022. Specifically, one member's fingerprint was on the license plate holder of the suspect vehicle, and two more were linked to the recovery of 2 of the 3 murder weapons. On September 14, 2022, the final murder weapon was recovered in a car occupied by DJ CHANDLER and others, that also contained five unclaimed cell phones. Your affiant now seeks permission to search those phones.

6

17.     I believe the TARGET DEVICES were abandoned by those formerly in possession of them and thus I believe I could search them absent a search warrant. However, in an abundance of caution, I seek a search warrant for evidence of crimes that I believe will be located thereon a revealed by my investigation and that of other law enforcement. I am not seeking permission to search a sixth phone seized from DJ CHANDLER on September 14, 2022, as further described below, because I do not believe it can be considered abandoned and there is obviously a significant delay between seizure and today's date.

### 1. CASE INITIATION: 2023 ARMED ROBBERY INVESTIGATION

18.     On February 19, 2023, at approximately 5:43 a.m., MPD responded to a shooting near 1727 West Mineral Street, Milwaukee, Wisconsin, and subsequently located two subjects, C.B. and A.A., both of whom advised they were the victims of a car jacking and abduction by seven unknown indivduals. C.B. and A.A. were later interviewed and advised law enforcement that upon leaving a party in Milwaukee on the above date, approximately five individuals (Targets) wearing dark clothing and masks attacked them as they were walking to their Chrysler 300 rental vehicle (Chrysler) and forced them into the Targets white SUV. One of the Targets obtained the keys to the Chrysler and, without permission, drove the Chrysler from the scene. Residential cameras that recorded the altercation confirm this account showing four Targets and a fifth driving the white SUV attacking the victims, abducting them, and stealing their car. After being struck multiple times and forced into the attacker's car,

both C.B. and A.A. were driven to C.B.'s residence where C.B. believe the Targets intended to rob him of items there. As they arrived at the residence, A.A. fled the car at which time one or more Targets shot at him with what are believed to be automatic weapon(s) striking him several times. C.B. then fled the car to his residence. MPD officers located twenty-four 9mm casings during their investigation. C.B. later stated he thought he could have been targeted because of social media posts he made where he flashed money.

19. On February 19, 2023, at approximately 6:45AM, the Milwaukee Police and Fire Departments responded to a vehicle fire at 227 East Townsend Street, Milwaukee, Wisconsin. The burned vehicle was identified as the Chrysler, which was rented on February 18, 2023, by M.A. from Enterprise Car Rental located 5300 South Howell Avenue in Milwaukee, Wisconsin. A 911 caller stated they observed a black male suspect standing near the vehicle within seconds of the vehicle being engulfed in flames. The black male was wearing black clothing with a black face mask. Under these circumstances, I believe the rental car was a vehicle used in interstate commerce that was intentionally destroyed by means of fire and thus an arson under federal law.

## TIMING ADVANCE DATA ANALYSIS

20. On March 9, 2023, ATF SA Hankins received records from T-Mobile related to Federal search warrant #23-M-303. The records included Timing advance "True Call" data related to cell phones that were within four different locations pertinent to the investigation, including the car jacking, shooting, arson, and one

8

previous shooting from January 2023 involving one of the firearms used in the car jacking shooting. Additionally, law enforcement interviewed  A.A. and C.B.A.A. and collected surveillance footage pertaining to the car jacking.  SA Hankins utilized law enforcement databases, custodial jail calls, additional call data records and Timing advanced data obtained via a search warrant to identify and determine that Jhony MARCHENA, Geo OWENS, (B/M, DOB: XX/XX/1997), Kentreal EVANS (B/M, DOB: XX/XX/2001), Marquis HARRIS (B/M, DOB: XX/XX/1997) and Trevon MALONE were in regular cell phone contact in the events leading up to and immediately after the robbery. Further, with the exception of OWENS, these individuals were in the area of the car jacking per cell phone location records and then several of these individuals, including OWENS, in the area of where A.A. was shot. I am also aware that C.B. later provided a statement coupled with cell phone contact records between A.A. and others in this group that calls into question A.A.'s role as a victim in this matter, but rather that of a conspirator. Finally, after the incident occurred, Marquis HARRIS' phone was off for a period of time.  When that device was turned back on, it was located in the area of Geo OWENS' home, leading investigators to conclude that HARRIS was with OWENS at this time. I believe this showed that these individuals acted in a manner consistent with working together in the planning and executing of the car jacking, abduction, shooting and arson of the Chrysler.

## 2. ANALYSIS OF Jhony MARCHENA'S PHONE

9

21.     On June 1, 2023, ATF executed Federal Search Warrant #23-MJ-122 at the residence of Jhony MARCHENA located at 9070 North 86th Street, Milwaukee, Wisconsin, which was signed by Magistrate Judge William Duffin.  ATF located an iPhone 13 Pro Max with the ID of Jhony MARCHENA.  The data extraction of the iPhone 13 Pro Max was initiated by Waukesha Police Department Detective David Feyen on or about June 9, 2023, pursuant to Federal Search Warrant #23-M-380 signed by Magistrate Stephen Dries.

22.     SA Hankins analyzed the data contained in MARCHENA's phone and determined he had phone numbers stored in his contacts for Geo OWENS, Kentreal EVANS, Trevon MALONE, and Marquis HARRIS.  SA Hankins also observed that MARCHENA was Facebook friends with a profile under the apparent control of Geo OWENS based on the photographs observed.

23.     During the analysis of the phone data, SA Hankins observed conversations between MARCHENA and  Geo OWENS regarding the sales of narcotics. SA Hankins also observed a February 26, 2023 conversation between MARCHENA and Kentreal EVANS in which MARCHENA identified a target for an apparent armed robbery and he directed EVANS to meet him at a location.  EVANS later replied "We here".

24.     Finally, during his analysis of MARCHENA's phone data, SA Hankins located an audio clip of a rap song sent by MARCHENA.  The song includes references

10

to stealing, robbing, jumping out on people while wearing masks, and pulling up in Jeeps. The song also includes references to Glocks with switches (machine gun conversion devices). It should be noted, SA Hankins has observed numerous videos pertaining to the Milwaukee based rap group Global Trap Stars or GTS in which MARCHENA appears in numerous music videos alongside Kentreal EVANS, Geo OWENS, Marquis HARRIS, Trevon MALONE, and Romaine HAWTHORNE.

## TEXT MESSAGES REGARDING DRUG ACTIVITY

25.     On March 4, 2023, a number attributed to Geo OWENS texted MARCHENA, "wanna take me to Serv haul". I know from training and experience that the term "serv / serve" is used to describe the selling of narcotics. MARCHENA responded to OWENS by agreeing to pick him up and MARCHENA texted OWENS when he arrived at OWENS' location. It should also be noted, SA HANKINS located a contact in MARCHENA's phone contact list for a number associated with the contact "Haul", leading investigators to believe OWENS is referring to serving narcotics to "Haul".

26.     On March 31, 2023, MARCHENA was in text communication with Geo OWENS regarding the attempted purchase by OWENS of unknown items from an unknown male. The following is a summary of that communication:

MARCHENA – "He said 4 for 100 a g for all of em he took 200 off he said"
OWENS  – "800 for all of em & we gone"

11

MARCHENA – "Imma call em rn"

MARCHENA – "He said 800$ and a zap he old nigga he'll take some cookie"

OWENS – "Ok"

27. I know from training and experience that the word "cookie" is a street slang term sometimes used for crack cocaine.

## TEXT MESSAGES REGARDING STOLEN VEHICLES

28. The text message history on MARCHENA'S cellphone included a message from a contact named "Lil Mone" / (414) 885-9551 on February 13, 2023, at 9:59AM in which Lil Mone asked MARCHENA, "Wat u got for Beamer u be bs".  MARCHENA later replied at 10:13PM, "Lil bro n nem damn near gon have Strike for u bro just bought srt Jeep from them."  I know "Beamer" to reference a BMW and "strike" means a high end car that is stolen and often used to commit crimes. I also know that "srt jeep" refers to a high value jeep.

29. The cellphone also included a text message on February 17, 2023, at 9:24AM from a contact named "Xo" / (414) 937-1247 to MARCHENA in which Xo stated, "Get on yo people for that Jeep too I need one".

## 3. MORTGAGE FRAUD/MONEY LAUNDERING

30. During the review of recorded prison calls placed by MARCHENA, SA Hankins located a call which occurred on August 2, 2023, in which MARCHENA placed a recorded call to Geo OWENS.  During that recorded call, MARCHENA explained to

12

OWENS that a female was worried about taking out an apparent loan because she couldn't afford the payment. OWENS informed MARCHENA that the female just needed to make modest payments and that OWENS would give her $500-$1000 month towards those payments. OWENS also said nothing would happen to the female if she didn't make payments. MARCHENA said the female was worried about her credit. OWENS said he had been texting the female earlier that same day. MARCHENA further stated that he was going to have his mother and another female do the same thing so that he could have multiple "cribs" himself. Your affiant is aware from training and experience that those who are engaged in criminal enterprise will often utilize techniques by which they can "clean" their money obtained through drug sales or other illegal means, such as by purchasing real estate. Additionally, those individuals will often conceal their identity by employing a third party to make the purchases of the property, in order to conceal their action from law enforcement detection.

## 4. GEO OWENS YOUTUBE INTERVIEW

31. SA Hankins reviewed an interview of Geo OWENS posted to YouTube by username "Dirty Glove Bastard" on October 25, 2022. The interview video was titled "Global Trapstar Talks About Life in Milwaukee, Following Dolph's Blueprint For Independent Artists." The video was publicly available and subsequently downloaded and inventoried. During the video, SA Hankins observed Jhony MARCHENA seated behind OWENS. During the video, the off-camera interviewer asked OWENS when

13

OWENS decided to "jump off the porch".  OWENS responded by saying that he started "trapping" when he got into high school.  The term "trapping" is a well-known synonym for selling drugs and engaging in other illegal activity.  OWENS further stated he had "inherited" trapping  from older friends as well as his brothers. The interviewer asked OWENS about the wildest things he had been a part of and, after some consideration, OWENS responded "shootings."

32.    In addition to discussing shootings, OWENS also said he owned property in Milwaukee that he uses to fund his rap career. The interviewer said it was important for OWENS to talk about the benefits of having diverse sources of income and "not just street shit."  OWENS said that he owned five separate houses in Milwaukee and had sold two houses.  OWENS also stated he learned about real estate from his dad. OWENS said his father had been "in the streets" and fell back on real estate and now his dad isn't "in the streets."  During the interview, OWENS described "street money" as free money. OWENS also mentioned he had brothers and friends locked up (in jail) and that he has to proceed differently.

33.    During the same interview, OWENS stated that he was the "leader" of his group, so if OWENS starts doing something, others typically follow.  OWENS said his guys started buying houses because he did.  OWENS stated he and his guys are making money off of houses and they "…aint got to do nothing illegal…"  OWENS stated he was an independent artist currently but he hoped to land a big deal and eventually start

14

his own record label called "Global Trap Stars".  The interviewer asked OWENS what it took to be a Global Trap Star and OWENS said it meant "going places, trying to get money, hustling…"

### 5. TREVON MALONE 2023 ARREST (MPD IR NO. 23-177-0141)

34.    On June 26, 2023, at approximately 5:55 PM MPD officers were attempting to locate Trevon MALONE (B/M, DOB: XX/XX/2002), whom they knew had valid arrest warrants for numerous felonies, when they observed MALONE in the 3800 block of N. 26th Street in Milwaukee, Wisconsin.  MALONE observed officers activate their emergency lights as they attempted to apprehend him.  MALONE was standing near a black Cadillac Escalade (bearing Wisconsin license plate ACK3265). MALONE entered the front passenger seat of the vehicle and forced the driver (later identified as Bo Taylor) out of the driver seat.  MALONE disregarded orders by officers and took control of the vehicle, leading officers on a pursuit of approximately 1.14 miles.

35.    Officers lost sight of the vehicle for approximately one minute near the intersection of N. 25th Street and W. Keefe Avenue, but then located the vehicle on a rear parking slab behind 3379 N 24th Street where I believe MALONE purposefully abandoned it and all items inside.Law enforcement processed and later impounded the car that MALONE had abandoned. Photographs were taken of the vehicle. The vehicle was fingerprinted and DNA samples taken. During a search of the vehicle, the

15

following items of interest were abandoned by the occupants, seized, and remain in law enforcement custody in Milwaukee:

- Spikes Tactical "multi caliber" AR type pistol (bearing serial number JACK03188, Inventory no. 23020545 item 1); Item was located inside a backpack on the rear floorboard between the captains seats.

- Glock pistol (model 29, 10mm, bearing serial number BYAH496, Inventory no. 23020545 item 2);  Item was located on the front driver seat.

- Anderson Mfg pistol (model AM-16, 5.56mm, bearing serial number 19267739, Inventory no. 23020545 item 3) with a machine gun conversion device installed; Item was located on the front passenger side floorboard.

- White Apple iPhone in a black case (model unknown, serial no. unknown, Inventory no. 23020552 item 1);  Item was located in the driver's seat.

- Wisconsin ID card for MALONE; Item was concealed inside the white Apple iPhone (Inventory no. 23020552 item 1) which was protected by the black case.

- White Apple iPhone with a cracked screen (model unknown, serial no. unknown, Inventory no. 23020552 item 2) Item was located in the driver's seat.

- Two Glock machine gun conversion devices/switches (Inventory no. 23020550 item 14); Items were  located inside a void in the center console/dash.

16

- Black nylon mask (Inventory no. 23020550 item 12); Located on passenger side floorboard.

- Black nylon mask (Inventory no. 23020550 item 13); Located in rear driver's side floorboard.

36. Later thatsame day, Bo TAYLOR (DOB: XX/XX/2000) arrived at MPD District 5 and reported an armed robbery in which the above described Escalade was stolen from him. The Escalade was confirmed to be registered to Ty TAYLOR (XX/XX/1997) who was determined to be the brother of B. TAYLOR. B. TAYLOR was arrested due to the Glock machine gun switches that were found inside the vehicle. MPD reports detail statements made by TAYLOR that were inconsistent with the facts observed and recovered by officers. B. TAYLOR admitted possessing the Glock pistol bearing serial number BYAH496 and the Spikes Tactical AR pistol bearing serial number JACK03188. It should be noted, during analysis of the CashApp data for the account belonging to Geo OWENS, agents located money tranfers between OWENS and Bo TAYLOR. Neither Bo TAYLOR nor MALONE have been charged with any offenses stemming from this incident. As such, it is my intention to further investigate this case. Upon checking Wisconsin CCAP, a reliable criminal records database, I observed that TAYLOR is not a convicted felon and that multiple arrest warrants are in effect for MALONE including for charges in Milwaukee and Racine County for discharging a firearm from a vehicle (occurring 4/10/23), eluding (occurring 8/17/22) and receiving stolen property/CCW (occurring 3/8/21).

17

## POSITIVE NIBIN CORRELATIONS

37.    On June 27, 2023, MPD test fired the aforementioned Anderson Manufacturing AR type pistol (Inventory no. 23020545 item 3) and entered the casings into the Integrated Ballistics Identification System (IBIS), which is part of the National Integrated Ballistics Information Network (NIBIN).   Analysis of the casing indicated this firearm was used in a total of three shootings in Milwaukee, Wisconsin.   This firearm is linked to the following shootings:

- On March 18, 2023, this firearm was used in a shooting which occurred at 2579 N Teutonia Ave., Milwaukee, Wisconsin. Two bystanders received non-fatal gunshot wounds. Six total firearms were used based on the recovery of other shell casings at the scene.

- On February 13, 2023, this firearm was used in a vehicle theft which occurred at 777 Van Buren St., Milwaukee, Wisconsin. The victim was carjacked while delivering Door Dash. The vehicle was later found with damage from gunfire. No shooting victims or witnesses were located.

- On October 30, 2022, this firearm was used in a shooting which occurred at 4141 N 15th St., Milwaukee, Wisconsin. No victim or witnesses were located.

### 6. DANEYSHA VELEZ HOMICIDE

38.    As the investigation into members of Global Trap Stars continued, agents learned of the homicide of Daneysha Velez (W/F, DOB: XX/XX/1997).  On July 21,

18

2022, at 1717 W Wright Street, MPD officers responded to a call of a shooting, and located Daneysha Velez, who suffered several fatal gunshot wounds. Officers located video which depicts Velez meeting an unknown subject at that location, when a white with black stripe Dodge Ram TRX pick-up truck (Ram truck) drove past Velez at which time unknown subjects shot her multiple times and also hit multiple residences in the area.. The unknown subjects left the location and officers located (15) 9mm casings from (3) different firearms.

39. That same day, MPD Det. Mike Braunreiter was contacted by Mequon Police Department who stated they had a Ram Truck, with distictive stripes on the hood, stolen in their city earlier that date. Mequon Police Department provided the vehicle's license plate as ST9673 (VIN no. 1C6SRFU93MN70564) .

40. On July 27, 2022, MPD located the Ram Truck with no license plates, abandoned at 2508 N. 51st Street, Milwaukee, Wisconsin. Inside the vehicle, officers located (3) 223 caliber casing. The vehicle was analyzed for forensic evidence and DNA swabs were taken from inside the vehicle. Those samples have not been analyzed as of the time of the drafting of this warrant.

41. In subsequent analysis of fingerprints located inside the Ram Truck, MPD identified a fingerprint located on the rear license plate cover, interior side, that matched the left middle fingerprint belonging to Jhony J. MARCHENA. (B/M, DOB: XX/XX/2022). Thus, I believe it is likely that MARCHENA was associated with this

19

shooting or will have information about it including on any cell phone he may have abandoned thereafter.

## 7. RECOVERY OF HOMICIDE GUN 1

42. On July 3, 2022, MPD attempted a traffic stop on a vehicle in the area of 3200 S. 9th Street. The driver of the vehicle fled from police before crashing in the area of 900 W. Morgan Avenue. Following a foot pursuit, MPD fought with and arrested the sole occupant of the vehicle, Romaine HAWTHORNE (B/M, DOB: XX/XX/1997). During a search of the vehicle, officers located a Glock Pistol with extended magazine. The Glock pistol had a switch (machine gun conversion device) installed.

43. MPD test fired the aforementioned Glock pistol and entered the casings into IBIS. Analysis of the casing indicated this firearm was used in the July 21, 2022 homicide of Daneysha Velez, which occurred at 1717 W. Wright Street., Milwaukee, Wisconsin. HAWTHORNE is currently charged in Milwaukee County state court with eluding an officer, reckless endangering safety and carrying a concealed weapon as a result of this incident. HAWTHORNE was released from custody on that case and a warrant has been issued for his arrest.

44. As noted above, HAWTHORNE has appeared in Global Trap Stars or GTS videos along side Jhony MARCHENA, including the video "case closed" where HAWTHORNE is observed sitting next to MARCHENA. Additionally, SA Hankins has observed MARCHENA appears in videos alongside Trevon MALONE, who was charged with eluding, as noted below, involving a car where law enforcement

20

recovered another firearm linked to the Velez homicide. Additionally, MPD officers have located a jail call placed by HAWTHORNE, using a third parties inmate code, to an unidentified individual. During the phone call, the unidentified individual states he is also talking to "Jhony", and HAWTHORNE proceeds to have a conversation with the individual identified as "Jhony". MPD officers recognized the voice to be that of Jhony MARCHENA, who discussed being released on Justice Point gps monitoring with HAWTHORNE.

### 8. RECOVERY OF HOMICIDE GUN 2

45.     On August 17, 2022, MPD officers conducted a traffic stop at 3436 S. 12th St. in the City of Milwaukee, on a silver Dodge Caravan bearing WI license plate AMD8246. Officers approached and identified the driver as Trevon MALONE and four other passengers. Officers observed a "roach" (partially burned marijuana blunt), in the ashtray, the distinct odor of marijuana, and an AR type rifle between the center console and the front passenger seat.

46.     The MPD reports further provide that MALONE became increasingly nervous and eventually fled from officers, leading the officers on a pursuit of approximately 0.75 miles. Officers briefly lost sight of the vehicle, but located it a few minutes later where it was abandoned by MALONE and others at 2855 S. 11th Street, Milwaukee. The vehicle was processed and the following items of interest were abandoned by the occupants, seized, and remain in law enforcement custody in Milwaukee:

21

- Glock pistol (model 23, .40 cal, bearing serial number BUCY056, Inventory no. 22030383 item 1) with a machine gun conversion device attached; Item was located in the rear 3rd row seat.

- Bersa pistol (model BP9CC, 9mm, bearing serial number K76601, Inventory no. 22030383 item 2); Item was located in the center of the second row seating.

- American Tactical rifle (model "Omii Hybrid", 5.56mm, bearing serial number NS223795, Inventory no. 22030383 item 3); Item was located in the 2nd row passenger's footwell.

- Ruger rifle (model AR-556, 5.56mm, bearing serial number 854-98191, Inventory no. 22030383 item 4); Item was located between the center console and the front passenger seat.

## POSITIVE NIBIN CORRELATIONS

47. On August 25, 2022, MPD test fired the American Tactical "Omni Hybrid" 5.56mm rifle. The casings were entered into IBIS and an analysis of the casing confirmed this firearm was used in the Velez homicide occurring on July 21, 2022.

48. On August 25, 2022, MPD test fired the above described Glock 23 pistol with the attached machine gun conversion device. The casings were entered into IBIS and an analysis confirmed the firearm was used in a July 26, 2022 shooting occurring at 4739 N. 19th Place where a victim suffered non-fatal gun shot wounds.

22

49. On August 25, 2022, MPD test fired the Bersa model BP9CC pistol. The casings were entered into IBIS and an analysis confirmed this firearm was used in two other shootings in Milwaukee, including to residences on December 21, 2021 and April 18, 2022.

## 9. RECOVERY OF HOMICIDE GUN 3

50. On September 14, 2022, at approximately 07:31 pm, Milwaukee Police Department (MPD) Officer (Ofc.) Shaundae McIntosh and Ofc. Campbell were on patrol in the area of 4700 W. Medford Avenue, in Milwaukee, Wisconsin, when they observed a Gray, Jeep Grand Cherokee, with heavy aftermarket tints and a dealer placard affixed to the rear of the vehicle. MPD officers initiated a traffic stop by activating their lights and sirens, at which point the driver began to disregard traffic signals and attempted to flee from the officers. Officers pursued the vehicle until it crashed at 3200 W. Capitol Drive.

51. After the crash, the officers observed four unidentified black male occupants flee on foot from the vehicle. Ofc. McIntosh arrested the rear passenger a short distance away and identified him as DJ CHANDLER (B/M, DOB: XX/XX/2000). CHANDLER is a convicted felon and thus cannot lawfully possess firearms. To date, neither CHANDLER nor any other occupants of this car have been charged with any crimes associated with this incident. Following the arrest of CHANDLER, MPD officers seized from his possession a Black Kyocera Flip phone (model unknown, serial

23

no. unknown, MPD Inventory no. 22034049 item 1,). That item has not been searched but remains on inventory with MPD.

52. Officers conducted a Wisconsin DOT check, which revealed the Jeep Grand Cherokee (VIN#1C4RJFAG3LC149847) was reported stolen on September 03, 2022, from Lake County, Illinois.

53. During a search of the vehicle the contents of which were abandoned by the occupants, MPD Officers seized the following items that remain in law enforcement custody in Milwaukee:

- Small sealed package with Skull designs containing a green leafy substance consistent in appearance with raw marijuana (Inventory no. 22034038 item 1); This item was located under the radio in the center console, and was later weighed at 1.73 grams and field tested positive for the presence of THC.

- Package labeled "America Standard Packaging" containing a green leafy substance consistent in appearance with raw marijuana (Inventory no. 22034038 item 2); This item was located on the front passenger floorboard, and was later weighed at 7.21 grams and field tested positive for THC.

- Black Apple iPhone w/ black case (model unknown, serial no. unknown, MPD Inventory no. 22034021 item 1, **TARGET DEVICE 1**); This item was located under the rear passenger side seat.

24

- White Apple iPhone w/ black rubber case and cracked screen (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 1, **TARGET DEVICE 2**); This item was located in the center console.

- White Apple iPhone w/ blue and gray rubber case (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 2, **TARGET DEVICE 3);** This device was located in the center console.

- Black US Cellular Flip phone (model unknown, serial no. unknown, MPD Inventory no. 22034023 item 1, **TARGET DEVICE 4**); This device was located behind the driver's seat.

- Black Apple iPhone w/ no case (model unknown, serial no. unknown, MPD Inventory no. 22034018 item 1, **TARGET DEVICE 5**); This device was located on the front passenger floorboard.

- Black "Backwoods" backpack (Inventory no. 22034028 item 1), located on the driver's side rear floorboard, containing the following items:

  o large clear bag with a green leafy substance consistent in appearance with marijuana (Inventory no. 22034038 item 3); This item was was later weighed at 400 grams and field tested positive for THC.

  o Small baggie containing 25 multi-colored pills (Inventory no. 22034038 item 4); This item was later weighed at 10.43 grams, and field tested positive for Methamphetamine.

25

- o Black WeighMax Digital scale (Inventory no. Inventory Number 22034028 item 3)

- o Loaded Glock pistol (model 19, 9mm, bearing serial no. BRNK872, Inventory no. 22034024 item 1) with a tan extended magazine; Officers observed the firearm had a small selector switch attached which converts the firearm to a fully automatic machine gun. It should be noted, the black backpack which contained this firearm, the aforementioned THC, the Methamphetamines, scales and packaging was located directly underneath the seat which was occupied by CHANDLER.

54. Following his arrest, CHANDLER was read his Miranda Warnings, waived them, and stated to officers he was sitting in the rear seat driver's side seat, where the backpack was found. However, he denied ownership of the backpack, it's contents, and any cell phones located in the vehicle. CHANDLER did not identify the other occupants of the vehicle. MALONE, OWENS, and MARCHENA were not in custody at the time of this incident when the other males fled from MPD and abandoned the vehicle

**POSITIVE NIBIN CORRELATIONS**

55. On September 16, 2022, MPD test fired the aforementioned Glock 19 pistol and entered the casings into IBIS. Analysis of the casing indicated this firearm was used

26

in a total of six shootings in Milwaukee, including the Velez homicide occurring on July 21, 2022. The other shootings occurred on the following dates and locations:

- On January 1, 2022, this firearm was used in a shooting which occurred at 3013 N. 39th Street, Milwaukee. No victim was located.

- On February 13, 2022, this firearm was used in a shooting which occurred at 1415 W. Lincoln Avenue, Milwaukee. Two victims were located with non-fatal gunshot wounds.

- On February 19, 2022, this firearm was used in a shooting which occurred at 9045 N. 84th Street, Milwaukee. No victim was located.

- On March 14, 2022, this firearm was used in a shooting which occurred at 7811 W. Sheridan Avenue, Milwaukee. One victim was located, whose vehicle was struck with gunfire.

- On March 18, 2022, this firearm was used in a shooting which occurred at 5431 W. Green Tree Road, Milwaukee. No victim was located.

## 10. CONCLUSION

56. On September 27, 2023, I learned of the MPD arrests and subsequent phone recoveries described above related to known members of Global Trap Stars. I know that during each of these incidents, the occupants fled from a stolen vehicle abandoning either their own or some other persons property inside the vehicle. As noted above, in the subsequent search of the vehicles, MPD located and inventoried the TARGET DEVICES. Finally, I spoke with MPD Det. Lori Rom, who stated in the event

27

an individual makes a specific claim to property, such as a cell phone, in MPD custody, the property could be returned. Det. Rom also stated that MPD does not maintain a record of individuals who call to inquire about property. Based on this information and the amount of time since the recoveries of the devices, your affiant believes the fact that these items have remained in MPD inventory is suggestive that nobody called to make a claim to the property, and thus, under the circumstances, I believe the devices to have been abandoned by their owner.

57. On October 17, 2023, the Honorable Nancy Joseph, U.S. Magistrate Judge in the eastern district of Wisconsin, signed a search warrant for TARGET DEVICES 1-5, with a command to execute the warrant by October 31, 2023. At the time the warrant was signed, Milwaukee Police Department (MDP) Detectives agreed to conducting the forensic extraction of the devices, within the stipulated time peried.

58. On or about November 28, 2023, Your Affiant was notified by the MPD Detectives that the cellular devices were never extracted nor was the extraction attempted or started within the stipulated time period, because MPD's software license for the application utilized to extract data from smartphones had expired. No extraction was attempted on the devices to date. Your affiant is requesting to renew this device warrant in order to facilitate an extraction of the target devices.

59. Your affiant spoke to ATF Special Agent Undre Ludington, who confirmed he has the necessary software and equipment to execute this warrant within the time allotted.

28

60. Further, I believe the TARGET DEVICES will contain data and records that date back many months if not years given the ability to transfer data from old devices to new devices coupled with my experience that individuals will keep their cell phone for several years before trading it in or possibly abandoning it. I know that with the ability to back up data remotely, it is relatively easy to transfer old data to a new phone. Thus, I believe it is probable the TARGET DEVICES will have evidence of a crime contained thereon in part given my knowledge that conspirators communicate with one another both before and after crimes. Further, the TARGET DEVICES will have location information contained thereon which I know can place an individual at pertinent locations at certain times and date.

61. Additionally, on September 28, 2023, ATF National Firearms Registration and Transfer Records (NFRTR) were queried regarding both the recovered machine guns; Glock pistol (model 19, 9mm, bearing serial no. BRNK872, Inventory no. 22034024 item 1) and the Glock pistol (model 23, .40 cal, bearing serial number BUCY056, Inventory no. 22030383 item 1). Your affiant determined neither firearm had been registered as a machine gun and were therefore unlawfull for any individual to possess.

62. I believe there is probable cause that additional information relevant to both any initial uncharged conduct described in the above investigations involving the theft of vehicles, eluding of law enforcement, and possession of firearms/machine gun devices will be located on the TARGET DEVICES. Further, I believe there is probable cause the TARGET DEVICES contain evidence of the following crimes associated with

29

the above described members of GTS including   violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon, 18 U.S.C. § 922 (o)(1) (possession of a machine gun unlawfully), 21 U.S.C. § 841(a) possession with the intent to distribute THC is housed within the aforementioned **TARGET DEVICES**.

63.     Your Affiant is aware that cellphones, tablets, computers and usb hard drives can be used to store information including photographs, text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, video and other data.

64.     Similarly, your affiant is aware that many cellphones, tablets, computers and usb drives contain a list of contacts and associate names, and cellphone numbers and other identifying information.  Your Affiant asks that this information be included in the search warrant, as it will assist in identifying the user/owner of the cellphone, individuals with whom the user had contact, and may provide evidence of the source of any guns involved in this investigation.

65.     Your Affiant is also requesting an authorized search of cellphone devices and computers to include all removable drives, cards, memory devices or similar devices attached to or contained within said cellphone or computer. Your Affiant is aware that cellphones, tablets, and computers frequently contain SD cards or other removable memory/storage devices upon which data, including photographs, videos, and other information, may be stored.

30

66. Your Affiant is aware that many cellphones, tablets and computers capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets travels and may provide evidence as to the location where the alleged illegal actions occurred. Similarly, said information may assist law enforcement with locating and identifying other subjects with whom the target was involved in related to narcotics trafficking, including by identifying the place or places where said illegal possession of firearms and/or narcotics may have occurred.

## TECHNICAL TERMS

67. Based on my training and experience, I use the following technical terms to convey the following meanings:

68. Wireless cellphone: A wireless cellphone (or mobile cellphone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These cellphone send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone. A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone. In addition to enabling voice communications, wireless cellphone offer a broad range of capabilities. These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other

31

information on personal calendars; and accessing and downloading information from the Internet. Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

69. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

70. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

71. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the

32

Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

72. Based on my training, experience, and research, I know that these cellphone devices have capabilities that allow them to serve as a wireless cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

73. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

74. There is probable cause to believe that things that were once stored on the device may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when

a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media— in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet

34

directory or "cache."

75. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

   e. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

35

f.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to

36

establish that a particular thing is not present on a storage medium.

76. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

77. Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

1.    The property to be searched is one electronic storage device associated with Milwaukee Police Department IR no. 22-257-0179 which can be further described as;

    a.  Black Apple iPhone w/ black case (model unknown, serial no. unknown, MPD Inventory no. 22034021 item 1, **TARGET DEVICE 1**)

    b.  White Apple iPhone w/ black rubber case and cracked screen (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 1, **TARGET DEVICE 2**)

    c.  White Apple iPhone w/ blue and gray rubber case (model unknown, serial no. unknown, MPD Inventory no. 22034022 item 2, **TARGET DEVICE 3**)

    d.  Black US Cellular Flip phone (model unknown, serial no. unknown, MPD Inventory no. 22034023 item 1, **TARGET DEVICE 4**)

    e.  Black Apple iPhone w/ no case (model unknown, serial no. unknown, MPD Inventory no. 22034018 item 1, **TARGET DEVICE 5**)

**Particular Things to be Seized**

1.      All records on cellular phone related to violations of of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon, 18 U.S.C. § 922 (o)(1) (possession of a machine gun unlawfully), 21 U.S.C. § 841(a) possession with the intent to distribute THC) including:

   a.  lists of contacts with any identifying information;

   b.  photographs, videos, or other media storage connected to drugs and firearms;

   c.  types, amounts, and prices of drugs and firearms purchased/sold;

   d.  any information related to sources or purchasers of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

   e.  all bank records, checks, credit card bills, account information, and other financial records related to drug and firearms commerce.

2.      Any and all financial records connected to the purchase/sale of firearms or drugs;

3.      Documentation establishing the identity of the individuals in control of the residences;

4.      Any and all financial records connected to the purchase/sale of firearms, and any correspondence regarding other firearms/drug sellers and/or purchasers;

2

5. Any evidence of firearm and illegal drugs or controlled substances, paraphernalia associated with controlled substances including scales and other weighing devices as well as packaging materials and containers used to package controlled substances;

6. Any evidence of proceeds of firearm and drug trafficking activities, including United States currency;

7. All bank records, checks, credit card bills, account information, and other financial records; financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

8. Lists of firearm and drug customers and related identifying information;

9. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearm and drug trafficking activities.

10. Any evidence of documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm and drug trafficking activities;

11. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

12. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently

3

called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data.

13. Evidence of indicia of occupancy, residency or ownership of premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys.

14. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

15. Records evidencing the use of the Internet Protocol address, including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4